# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MOSES BUCHANAN**<br>     **LA. DOC #256425** | **CIVIL ACTION NO. 6:14-cv-0840** |
| **VS.** | **SECTION P** |
| | **JUDGE HAIK** |
| **WARDEN LOUISIANA STATE**<br>**PENITENTIARY** | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

*Pro se* petitioner Moses Buchanan filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on April 15, 2014.  Petitioner is an inmate in the custody of the Louisiana Department of Corrections, incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.  Petitioner attacks his September 26, 2007 conviction for armed robbery for which he was sentenced on April 4, 2008 to forty years imprisonment by the Twenty-Seventh Judicial District Court for St. Landry Parish, Louisiana.

This matter has been referred to the undersigned in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court. For the following reasons, it is recommended that this *habeas corpus* petition be **DENIED AND DISMISSED WITH PREJUDICE**.

## STATEMENT OF THE CASE

The facts surrounding the crime and trial testimony were summarized by the Third Circuit as follows:

On the evening of August 26, 2006, a man entered Kiki's Drive–Thru Daiquiri Shop in Opelousas, Louisiana, holding his crotch, and requesting to use the restroom. Wanda Robin was working behind the bar and her son, Ryan Robin, her niece, Lindsey Johnson, and Justin Fontenot were sitting at the bar having drinks. The man was directed to the restroom and departed the bar soon thereafter. About fifteen to twenty minutes later, the man returned to the bar with a shotgun, pointed the gun at everyone, and yelled at them to get down. He then pointed the gun at Wanda and instructed her to open the register. After Wanda handed over the cash from the register, the robber instructed everyone not to move or they would die, and he fled the bar. Following a brief investigation, petitioner was arrested on August 29, 2006, and charged with armed robbery."

*State v. Buchanan*, 36 So.3d 1076, 1078 (La. App. 3rd Cir. 2010).

Following a two day jury trial, which began on September 25, 2007, the jury found petitioner guilty as charged. Three of the four eyewitnesses present during the robbery (Wanda Robin, Ryan Robin and Justin Fontenot) identified petitioner as the perpetrator from a pre-trial photo line-up.  At trial, all three of these eyewitnesses also identified petitioner as the person who robbed the bar.  The remaining eyewitness (Lindsey Johnson) testified that she was not able to identify the robber in the pre-trial photo line-up, but at trial she was certain of her identification of petitioner as the perpetrator of the crime. *Id*. at 1079.  Three of the four eyewitnesses (Ryan Robin, Lindsey Johnson and Justin Fontenot) had two opportunities to view petitioner the night of the armed robbery, once when petitioner entered the bar prior to the offense asking to use the restroom and a second time when petitioner entered the bar fifteen to twenty minutes later to commit the armed robbery.  *Id*. at 1080.  There was also corroborating testimony from Richard Griffin who placed petitioner at the scene.  Griffin identified petitioner in court as one of

2

two persons he drove to the bar on the evening of the armed robbery.  *Id*. at 1082.

On May 5, 2010, the Louisiana Third Circuit Court of Appeal affirmed petitioner's conviction and sentence.  *State v. Buchanan*, 36 So.3d 1076 (La. App. 3rd Cir. 2010). The Third Circuit's opinion reveals that petitioner asserted the following assignments of error: (1) that there was insufficient evidence to support petitioner's conviction; (2) that the trial court erred in allowing the State to effectively use petitioner's decision to exercise his right to remain silent against him in an attempt to rehabilitate Officer Roylis Gallow; (3) that petitioner's right to confrontation was denied when statements of a confidential informant or cooperative individual (CI) as to petitioner's description and identity were admitted; (4) that it was error for the trial court to instruct the jury that an investigator need not reveal the identity of a CI and consequently deny petitioner the opportunity to cross-examine the CI at trial; and (5) that petitioner's sentence was excessive.  The Third Circuit did not consider petitioner's second, third or fourth claims under La. C. Crim. P. art. 841(A) because counsel did not make a contemporaneous objection at trial.  *See Id*. at 1082-1083. Petitioner did not seek further direct review in the Louisiana Supreme Court.

Petitioner filed an Application for State Post-Conviction relief on April 28, 2011, in which he raised ineffective assistance of counsel claims and a claim that the trial court erred when, over defense objection, the prosecutor was allegedly permitted to go outside the scope of direct on cross-examination.  An evidentiary hearing was held on April 26, 2012, at the conclusion of which, the Application was denied. [rec. doc. 9-1, pgs. 69-71;

rec. pg. 159-258].

Petitioner sought writs in the Louisiana Third Circuit Court of Appeal.  The writ application was denied by the Third Circuit on May 20, 2013, the court finding "no error in the trial court's denial of [petitioner's] Application for Post-Conviction Relief . . . ." [rec. doc. 9, pg. 1, *State v. Buchanan*, 2012-KH-0841 (La. App. 3rd Cir. 2013)].

Petitioner sought writs in the Louisiana Supreme Court on June 11, 2013. [rec. doc. 9, pgs. 2-30].  The Louisiana Supreme Court denied writs without comment on March 21, 2014.  *State ex rel. Buchanan v. State*, 2013-KH-1677, 135 So.3d 610 (La. 2013).

Petitioner signed the instant federal *habeas corpus* petition on April 14, 2014, and it was received and filed by the Clerk of this Court on April 15, 2014. Petitioner asserts the following claims for relief: (1) ineffective assistance of counsel because counsel (a) failed to object to Officer Gallow's testimony in which he referred to petitioner's alleged invocation of his right to counsel and post-arrest silence, allegedly prohibited by *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), (b) failed to effectively handle issues associated with a confidential informant (CI), by not objecting to testimony regarding information received by police from a CI on confrontation clause grounds, failing to object to the trial court's instruction to the jury as to why the identity of a CI need not be disclosed, and failing to call the CI to testify at trial when the identity of the CI had allegedly been disclosed by the State during discovery, (c) failed to file pre-trial motions, or a motion to hire an investigator, (d) failed to impeach three of the State's

witnesses (Richard Griffin, Kathy Victor and Jeremy Victor) by questioning them about alleged prior convictions, (e) failed to file a motion to suppress information provided by the CI to police and statements relating to petitioner's post-arrest silence, (f) failed to file a Motion in *Limine* excluding petitioner's post-arrest statement to police, and (g) labored under a conflict of interest – that counsel had previously represented the State's witness Richard Griffin; and (2) the trial court erred by overruling petitioner's objection that the State's questioning of Officer Gallow was outside the scope of the direct examination.

The State has filed an Answer [rec. docs. 15 and 16], to which petitioner filed a Reply. [rec. doc. 17].  This Report and Recommendation follows.

## LAW AND ANALYSIS

### *Standard of Review*

This *habeas* petition was filed on April 15, 2014; therefore the standard of review is set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA).  *Knox v. Johnson,* 224 F.3d 470, 476 (5th Cir. 2000); *Orman v. Cain,* 228 F.3d 616, 619 (5th Cir. 2000).[1]  AEDPA substantially restricts the scope of federal review of state criminal court proceedings in the interests of federalism, comity, and finality of judgments.  *Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir. 2000)

---

[1] Before enactment of AEDPA, "a federal court entertaining a state prisoner's application for *habeas* relief   . . .   exercise[d] its independent judgment when deciding both questions of constitutional law and mixed constitutional questions (i.e., application of constitutional law to fact).  In other words, a federal *habeas* court owed no deference to a state court's resolution of such questions of law or mixed questions."  *Montoya ,* 226 F.3d at 403-04  *citing Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000) and 28 U.S.C. S 2254(d) (West 1994).

*citing Teague v. Lane,* 489 U.S. 288, 306, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and

*Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000)[2] (noting

that AEDPA "placed a new restriction on the power of federal courts to grant writs of

*habeas corpus* to state prisoners").

Title 28 U.S.C. § 2254(d) as amended, states as follows:

**(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

**(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

**(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the deferential scheme of § 2254(d), as amended, this court must give

deference to a state court decision for "any claim that was adjudicated on the merits in

State court proceedings" unless the decision was either "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States,"  28 U.S.C. § 2254(d)(1), or the decision "was based

on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."  28 U.S.C. § 2254(d)(2).

---

[2]Justice O'Connor delivered the opinion of the Court with respect to the standard of review, while Justice Stevens delivered the opinion of the Court with respect to other aspects of the opinion which have no bearing on the issues herein.  Accordingly, the undersigned will refer to Justice Steven's opinion as a concurring opinion.

A *habeas* petitioner has the burden under AEDPA to prove that he is entitled to relief.  *Ormon*, 228 F.3d at 619 *citing Williams,* 120 S.Ct. at 1518, and *Engle v. Isaac*, 456 U.S. 107, 134-35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).  Under § 2254(d), as amended, "[t]he federal courts no longer have a roving commission to discern and 'correct' error in state court proceedings, but must exercise a more limited review . . . ." *Grandison v. Corcoran*, 78 F.Supp.2d 499, 502 (D. Md. 2000).  Federal courts may not grant the writ merely on a finding of error by a state court or on a finding of mere disagreement with the state court.  *Montoya,* 226 F.3d at 404;  *Orman,* 228 F.3d at 619.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a  set of materially indistinguishable facts."  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) *citing Williams,* 120 S.Ct. at 1523;  *Montoya,* 226 F.3d at 403-04 *citing Williams*, 120 S.Ct. at 1523.  "The 'contrary to' requirement 'refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision.'"  *Dowthitt,* 230 F.3d at 740 *citing Williams*, 120 S.Ct. at 1523.

Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt,* 230 F.3d at 741 *citing Williams,* 120 S.Ct. at 1523.  The

standard is one of objective reasonableness. *Montoya,* 226 F.3d at 404 *citing Williams,* 120 S.Ct. at 1521-22.  A federal *habeas* court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . [r]ather, that application must also be unreasonable." *Williams,* 120 S.Ct. at 1522.

Section 2254(d)(2) speaks to factual determinations made by the state courts. *Dowthitt,* 230 F.3d at 741.  Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence.  *Id.*  Thus, this court must defer to the state court's decision unless it was based on an unreasonable determination of the facts in light of the record of the State court proceeding.  *Id. citing* 28 U.S.C. § 2254(d)(2); *Knox,* 224 F.3d at 476 *citing Chambers v. Johnson,* 218 F.3d 360, 363 (5th Cir. 2000).

In sum, "[a] state court's determination that a claim lacks merit precludes federal *habeas* relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786 (2011). Thus, under § 2254(d), "[a]s a condition for obtaining *habeas corpus* from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-787.  "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786.

## I.  Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.  *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984).

The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness.  *Id.* at 688.  Judicial scrutiny of counsel's performance must be "highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689.  The court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (citation omitted).  Thus, this court's review "strongly presum[es] that counsel has exercised reasonable professional judgment."  *United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996) *quoting  Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th  Cir. 1986).  Courts may "not find ineffective assistance of counsel merely because [the court] disagree[s] with counsel's trial strategy." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) *citing Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997).

Rather, if a tactical or strategic decision is "conscious and informed . . . [it] cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Martinez v. Dretke,* 404 F.3d 878, 885 (5th Cir. 2005); *United States v. Cavitt*, 550 F.3d 430, 440 (5th Cir. 2008*) quoting Crane*, 178 F.3d at 314.

*Strickland'*s prejudice element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[3]  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) *citing Strickland,* 104 S.Ct. at 2068.  However, self serving conclusory statements that the outcome would have been different "fall far short of satisfying *Strickland'*s prejudice element." *Id.*

Because both *Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient

---

[3]The *Strickland* court outlined the extent of prejudice that must be established by the defendant:
An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of the criminal proceeding if the error had no effect on the judgment.  *Cf. United States .v Morrison,* 449 U.S. 361, 364-65 (1981).

Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability exists if the probability is sufficient to undermine confidence in the outcome.

When a defendant challenges a conviction, the question is whether there is reasonable probability that absent the errors the fact-finder would have a reasonable doubt respecting guilt.

*Strickland, supra*, at pages 691-692.

showing of prejudice, without inquiry into the adequacy of counsel's performance."

*Strickland,* 466 U.S. at 689-94.  Petitioner must satisfy both prongs of *Strickland,*

demonstrating both that counsel's  performance was deficient and that the deficiency

prejudiced the defense.  *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Green v.*

*Johnson,* 160 F.3d 1029, 1035-36 (5th Cir. 1998). However, "[m]ere conclusory

allegations in support of a claim of ineffective assistance of counsel are insufficient to

raise a constitutional issue.*" Green,* 160 F.3d at 1043.

**(a) Failure to Object to Officer Gallow's Testimony**

Petitioner contends that counsel was ineffective for failing to object to Officer

Gallow's testimony in which Gallow referred to petitioner's alleged invocation of his right

to counsel and post-arrest silence, allegedly prohibited by *Doyle v. Ohio*, 426 U.S. 610, 96

S.Ct. 2240, 49 L.Ed.2d 91 (1976).

The record reflects that during the cross-examination of Officer Gallow by the

State, Gallow testified that he had advised petitioner of his *Miranda* rights and obtained a

written waiver by petitioner of those rights, in which petitioner expressly and in writing

agreed to freely and voluntarily "talk" to Gallow about the crime.  Gallow further testified

that he believed that petitioner understood the rights which had been read to him, and that

he, Gallow, did not threaten, use physical force or violence on petitioner nor make any

offers, promises or inducements to petitioner to obtain the written waiver of rights.

Thereafter, before Gallow began to question petitioner, petitioner gratuitously stated,

without any prompt by Gallow,  "I don't think I want to talk about this anymore.  I don't

11

want to confess about this robbery without a lawyer present because it carries a lot of time." [rec. pg. 93-97].  Defense counsel, Janet Dunn Malbrough ("Ms. Malbrough"), did not object to the admission of this statement.

Assuming, without deciding,  that the above comment constitutes a *Doyle* violation, petitioner is nevertheless not entitled to relief on his ineffective assistance of counsel claim.  Petitioner's claim of ineffective assistance of counsel following counsel's failure to object to a *Doyle* error is analyzed under the  familiar two part *Stickland* analysis. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

In *United States v. Chavez*, the defendant filed a Motion to Vacate pursuant to § 2555 alleging that his counsel's failure to object to a *Doyle* error constituted ineffective assistance of counsel.  Petitioner argued that the un-objected to "comments on his post-arrest silence took away his only defense . . . undermining his testimony that he had no involvement in the drug operation . . . [inviting the jury] to consider why [he] did not tell the same story after his arrest as he did on the stand, which is the very evil *Doyle* sought to avoid."  *Chavez,* 193 F.3d at 379.

The Fifth Circuit rejected that claim noting that "counsel's failure to object certainly diminished [the petitioner's] possibility of reversal on direct appeal" but that nevertheless, "the focus [on *habeas* review of a claim of ineffective assistance of counsel] is whether a reasonable probability exists that counsel's deficient performance affected the outcome and denied [petitioner] a fair trial."  *Id.*   Because the evidence against

Chavez was "significant",  the Fifth Circuit held that petitioner failed to demonstrate *Strickland* prejudice; petitioner received a fair trial and it was unlikely that the outcome of the trial would have been different absent the *Doyle* error.  *Id.* at 379-380.  Accordingly, his claim was rejected.  *See also Greene v. Cooper,* 2013 WL 1567444, * 22-24 (W.D. La. 2013) *citing Chavez.*

In the case at hand, as in *Chavez*, petitioner has failed to demonstrate that he was actually prejudiced by the prosecutor's alleged reference to petitioner's post-arrest, post-*Miranda* silence or his alleged invocation of his right to counsel.  Indeed, the cited testimony appears to have been intended to rehabilitate Officer Gallow's credibility, which the defense had attempted to undermine by suggesting that Gallow had coerced the State's witnesses to provide incriminating statements identifying petitioner as the perpetrator, rather than an attempt to impeach petitioner or attack petitioner's exercise of his Constitutional rights.

The focus of this Court's analysis, however, is whether a reasonable probability exists that counsel's alleged deficient performance affected the outcome of petitioner's trial and denied petitioner a fair trial.  *Chavez*, 193 F.3d at 379.   After reviewing the testimony of all of the witnesses and the evidence submitted, the undersigned concludes that petitioner did receive a fair trial, and that, in light of the strength of the government's evidence and the limited context in which the alleged *Doyle* violation occurred, petitioner has not established that the result of the trial would have been different had counsel objected to Officer Gallow's recitation of petitioner's statement, or had that testimony not

been elicited in the first instance.

In light of all the testimony and evidence produced at trial, the alleged *Doyle* violation did not rise to the kind of prejudice envisioned by *Strickland.* The government's evidence of guilt in this case was significant. As recounted above, three of the four eyewitnesses present during the robbery, Wanda Robin, Ryan Robin and Justin Fontenot, identified petitioner as the perpetrator from a pre-trial photo line-up.[4] At trial, all three of these eyewitnesses also identified petitioner as the person who robbed the bar.[5] The remaining eyewitness, Lindsey Johnson, testified that she was not able to identify the robber in the photo line-up, but at trial she was certain of her identification of petitioner as the perpetrator of the crime.[6] Furthermore, three of the eyewitnesses, Lindsey Johnson, Ryan Robin and Justin Fontenot, had two different opportunities to view the perpetrator, once when he entered the bar to use the restroom and a second time when he returned to the bar with a shotgun.[7] Finally, another witness, Richard Griffin, corroborated the eyewitnesses' testimony by placing petitioner at the scene of the armed robbery. Griffin identified petitioner in court and testified that petitioner was one of two men he drove to the bar shortly before the armed robbery was committed.[8]

---

[4]rec. pg. 842, 861, 884.

[5]rec. pg. 842-843, 861-862, 884-885.

[6]rec. pg. 853-854.

[7]rec. pg. 850-851, 858-859, 868-869.

[8]rec. pg. 888-889.

After hearing this evidence, the jury rejected petitioner's mis-identification theory, and petitioner has not shown that there is a reasonable probability that, but for counsel's failure to object to Gallow's testimony, the jury's verdict would have been different. To the contrary, it is very unlikely that the outcome would have been different absent the alleged *Doyle* error.  Stated differently, Gallow's testimony was simply not so significant or injurious that it could be viewed as having swayed the jury's verdict or rendered that verdict unworthy of confidence.  Accordingly, petitioner is not entitled to *habeas* relief with respect to this claim.

**(b) Failure to Effectively Handle Issues Associated with a Confidential Informant**

Petitioner contends that counsel was ineffective for failing to effectively handle issues associated with a confidential informant (CI).  More specifically, petitioner contends that counsel was ineffective by not objecting to testimony regarding information received by police from a CI on confrontation clause grounds, failing to call the CI to testify at trial when the identity of the CI had allegedly been disclosed by the State during discovery, and failing to object to the trial court's instruction to the jury as to why the identity of a CI need not be disclosed.  Each of these claims lack merit for the reasons which follow.

Petitioner first contends that counsel was ineffective by not objecting to testimony regarding information received by police from a CI on confrontation clause grounds.  In support of this argument, petitioner relies heavily on *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), wherein the Court held that a hearsay

statement by a non-testifying declarant offered by the prosecution against an accused defendant violates the defendant's Sixth Amendment rights under the confrontation clause if the statement is testimonial and the defendant lacks an opportunity for cross-examination.

Under *Crawford* and Confrontation Clause jurisprudence, petitioner's argument to this Court is fatally flawed.  The complained of testimony regarding the information received by police from the CI was elicited, not by the State for use against petitioner, but rather, the testimony was elicited by the defense to support petitioner's misidentification defense during direct examination of Officer Gallow and Sergeant Harrison, neither of whom were called by the State in its case in chief.  Thus, the record before this Court discloses no *Crawford* or Confrontation Clause violation to which defense counsel could have objected.

Furthermore, while the State then questioned each witness on cross-examination regarding the information received from the CI to address issues raised by the defense, it is well settled that a  defendant cannot open the door to inadmissible evidence and then later object to such "invited error."  *United States v. Acosta*, 475 F.3d 677, 683 (5th Cir. 2007); *United States v. Raymer*, 876 F.2d 383, 388 (5th Cir. 1989). Failure to  make a frivolous or futile objection does not cause counsel's performance to fall below an objective level of reasonableness.  *See United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) *citing Green*, 160 F.3d at 1037; *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th

Cir. 2002) *citing Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir. 1990).

Petitioner also alleges that counsel was ineffective for failing to call the CI to testify at trial when the identity of the CI had allegedly been disclosed by the State during discovery.  Complaints of uncalled witnesses are not favored in federal *habeas corpus* review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of  the content of a prospective witness' testimony are largely speculative.  *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001) *citing Lockhart v. McCotter,* 782 F.2d 1275, 1282 (5th Cir. 1986), *Marler v. Blackburn,* 777 F.2d 1007, 1010 (5th Cir. 1985),  *Murray v. Maggio,* 736 F.2d 279, 282 (5th Cir. 1984), *United States v. Cockrell,* 720 F.2d 1423, 1427 (5th Cir. 1983), and *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978); *Evans v. Cockrell*, 285 F.3d 370, 377(5th Cir. 2002).  "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, a *habeas* court cannot even begin to apply *Strickland* 's standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance." *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).

Moreover, where the only evidence of a missing witness's testimony is from the defendant, courts view such claims with great caution.  *Sayre,* 238 F.3d at 636 *citing Lockhart,* 782 F.2d at 1282, *Marler,* 777 F.2d at 1010,  *Murray,* 736 F.2d at 282, *Cockrell,* 720 F.2d at 1427, and *Buckelew* , 575 F.2d at 521.  Thus, "[a] prisoner's bald

conclusory assertion that [favorable] witnesses were not called does not serve to 'overcome the strong presumption that his counsel's actions were reasonable.'" *Sayre,* 238 F.3d at 636 citing *Marler,* 777 F.2d at 1010.  Moreover, to demonstrate the requisite *Strickland* prejudice, the petitioner must show not only that the witness' testimony would have been favorable, but also that the witness was available and willing to testify at trial. *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985); *Boyd v. Estelle,* 661 F.2d 388, 390 (5th Cir. 1981).

Petitioner fails to meet this standard.  He does not make any showing of what the CI testimony would have been and his mere speculation is insufficient to justify *habeas corpus* relief.  Specifically, petitioner fails to demonstrate that the CI's testimony would have been favorable to the defense or that the CI was available and willing to testify at trial.  To the contrary, the record reveals the opposite.  At the post-conviction hearing, petitioner's counsel, Ms. Malbrough, testified that she had read the statement of the CI and that the information contained therein was not in petitioner's "best interest" and "wasn't favorable to him." [rec. pg. 187].

Finally, given Ms. Malbrough's testimony, it is clear that she made a tactical decision not to call the CI at trial.  By not calling the CI to testify, defense counsel was able to use this missing evidence to undermine the reasonableness of the investigation conducted by law enforcement personnel and bolster petitioner's misidentification defense by casting doubt upon their belief that petitioner was, in fact, the armed robber.  Under

the circumstances, the challenged action may be considered sound trial strategy which was not "so ill chosen that it permeates the entire trial with obvious unfairness.'" *See Strickland*, at 689; *Martinez,* 404 F.3d at 885; *Cavitt*, 550 F.3d at 440 *quoting Crane*, 178 F.3d at 314.

Finally, petitioner alleges that counsel was ineffective for failing to object to the trial court's instruction to the jury as to why the identity of a CI need not be disclosed. Petitioner essentially argues that the Court's statement to the jury, explaining why counsel were arguing about the propriety of defense counsel's questions to Sergeant Harrison, was an incorrect statement of law, given that the identity of the CI had already been disclosed to the defense in discovery.[9] Thus, petitioner argues that any privilege which may have existed regarding the identity of the CI was waived, and defense counsel therefore should have objected to the instruction.

Even if the instruction was an incorrect statement of law, under the circumstances presented, petitioner is not entitled to relief.  Petitioner fails to show how, had an objection to the instruction been lodged by defense counsel, the outcome of the trial would have been different.  Petitioner's self serving conclusory statements that the outcome would have been different "fall far short of satisfying *Strickland*'s prejudice

---

[9]The trial court's instruction was as follows:
> Let me just instruct the jury just so you know what's going on.  The law does not allow or require a police officer to disclose a confidential informant.  She has no obligation to do that unless this witness would be willing to do that on her own so that's what's being argues about between counsel.

[rec. pg. 940].

element." *Sayre*, 238 F.3d at 635.

For these reasons, *habeas* relief with respect to these claims is not warranted.

**(c) Failure to File Pre-Trial Motions, or a Motion to Hire an Investigator**

Petitioner contends that counsel was ineffective for failing to file pre-trial motions, or a motion to hire an investigator.

With respect to petitioner's first allegation regarding the filing of unspecified pre-trial motions, during post-conviction proceedings, Ms. Malbrough testified that she and petitioner met to discuss strategy, and during these meetings, they discussed pre-trial Motions which could be filed, but that petitioner was not interested in filing these Motions.  Accordingly, after discussion of the pros and cons of potential pre-trial Motions, a joint decision was made not to file such Motions.  [rec. pg. 175-176, 181, 204-205].

Counsel is charged only with a duty to assist a defendant; he is not a master of the defense. *United States v. Masat*, 896 F.2d 88, 92 (5th Cir. 1990).  Accordingly, if a defendant knowingly makes a choice, her attorney is ethically bound to follow the defendant's wishes. *Id. citing Autry v. McKaskle*, 727 F.2d 358 (5th Cir.), *cert. denied*, 465 U.S. 1090, 104 S.Ct. 1462, 79 L.Ed.2d 909 (1984).  That is exactly what Ms. Malbrough testified she did in this case.  Malbrough's alleged inaction cannot therefore be found to have been objectively unreasonable.

20

Furthermore, petitioner does not specify what pre-trial Motions he believed counsel should have filed.  He suggests that had counsel should have filed motions on "defensive issues, to seek pre-trial discovery" and "basic boiler plate" motions, to have enabled Ms. Malbrough to "have discovered facts which would have aided her in the defense of [petitioner]."  However, as noted by the State, counsel entered into a joint stipulation permitting open file discovery, and the record demonstrates that, pursuant to that stipulation, defense counsel had the police reports and witness statements taken in connection with the investigation of this case and that petitioner reviewed this discovery with Ms. Malbrough. [rec. pg. 48, 175, 178, 199, 219-220].  Thus, there was no need for counsel to have filed additional Motions to obtain the information which had already been provided to her.  The first *Strickland* prong is therefore not met.

Moreover, as is the case in the instant Motion, during post-conviction proceedings petitioner was unable to articulate any evidence he had or any information he believed would have been discovered by the filing of these unspecified pre-trial Motions, nor could he demonstrate that any such Motion would have been successful in the first instance. [*See* rec. pg. 224-225].  As such, in the absence of any particularized showing of the Motions that petitioner believes counsel should have filed, that any such Motion would have been successful or would have, with reasonable probability, changed the outcome of the trial, petitioner has not satisfied his burden of demonstrating prejudice.  The second *Strickland* prong is therefore not met.

The same is true with respect to petitioner's allegation that counsel was ineffective for failing to file a motion to hire an investigator to testify at trial.  Petitioner asserts his belief that had an investigator been retained, at trial the investigator could have testified that it was temporally impossible for petitioner to have returned to the bar a second time after being dropped off by Richard Griffin near a car wash on the north end of town. However, as was the case with the alleged missing testimony from the CI discussed above, petitioner merely speculates that this could, in fact, have been demonstrated through the testimony of an investigator.  Petitioner's unsupported, bald conclusory assertion that an investigator could have provided this alleged favorable testimony  "does not serve to 'overcome the strong presumption that his counsel's actions were reasonable'" and does not satisfy petitioner's burden of demonstrating *Strickland* prejudice.  *Sayre,* 238 F.3d at 636 *citing Marler,* 777 F.2d at 1010; *Alexander*, 775 F.2d at 602; *Boyd*, 661 F.2d at 390.

Moreover, petitioner has not met the first *Strickland* prong by demonstrating that counsel's actions were objectively unreasonable.  During post-conviction proceedings Ms. Malbrough testified that, pursuant to the policy of the St. Landry Public Defender's Office, she met with Mr. Lopez, the Director of that Office, for permission to hire a private investigator, but Mr. Lopez declined her request on grounds that he did not feel that sufficient grounds for the hiring existed. [rec. doc. 166-168].  Ms. Malbrough further testified that petitioner did not specify what he thought an investigator could prove, other

than that the shape of petitioner's glasses were different than that described by the

eyewitnesses, nor was there anything she believed could be found by an investigator to

help petitioner's defense and Malbrough "didn't want to pull out something that was going

to hurt him." [rec. pg. 197-198, 206].  Under these circumstances, counsel's failure to file

a Motion to Hire an Investigator falls squarely within the ambit of reasonable trial

strategy.

For these reasons, *habeas corpus* relief is not warranted with respect to these

claims.

### (d) Failure to Impeach Three of the State's Witnesses

Petitioner contends that counsel was ineffective for failing to impeach three of the

State's witnesses (Richard Griffin, Kathy Victor and Jeremy Victor) by questioning them

about alleged prior convictions.

There is no competent evidence in the record that either Kathy or Jeremy Victor

had any prior convictions that could have been the subject of proper cross-examination

questioning.  In making this statement, the Court notes that at trial Ms. Malbrough asked

Jeremy Victor if Officer Gallow threatened to call his probation officer if he, Victor, did

not testify.  That question, however, drew an objection from the State which was

sustained by the Court. [rec. pg. 912].

At the post-conviction hearing Ms. Malbrough was shown a copy of a guilty plea

form in which Richard Griffin plead guilty to a 2003 misdemeanor possession of

marijuana charge. [rec. pg. 192].  She testified that petitioner was actively engaged in the questioning of the witnesses, whispering questions to her during the testimony of each witness. [rec. pg. 203].  When asked why she did not ask Griffin further questions at trial, Malbrough testified that Griffin had placed petitioner at the scene and it was her legal opinion that further questioning would be detrimental to petitioner's interest and could bolster his unfavorable testimony against petitioner because it could "leave a lingering effect on the minds of the jury and I didn't want anything further said by this witness. . . ." She therefore "wanted him to get down from the stand." [rec. pg. 204].  Accordingly, Malbrough made a strategic decision to cease questioning.

In denying relief on this claim, the trial court found that counsel's decision not to question these witnesses about alleged prior convictions was a legitimate strategic choice which the Court would not second guess as follows: "you cannot use hindsight in these matters.  The Court is not allowed to question the tactical positions nor plans or schemes that are taken by counsel in these cases. That would go down a very dangerous slope." [rec. pg. 257].

Petitioner has not shown that the state court's ruling was contrary to, or an unreasonable application of, federal law, nor that the state court's factual determinations were unreasonable in light of the State court record.  To the contrary, the trial court's ruling is consistent with Fifth Circuit precedence holding that "[b]ecause decisions regarding cross-examination are strategic, they usually will not support an ineffective assistance claim." *United States v. Bernard*, 762, 472 (5th Cir. 2014) (internal quotation

24

and citation omitted). Accordingly, federal *habeas corpus* relief must be denied.

Initially, the Court notes that petitioner has provided no competent evidence that either Kathy or Jeremy Victor in fact had any prior criminal offenses that could have been the subject of cross-examination by defense counsel. "Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.*" Green,* 160 F.3d at 1043.

Moreover, with respect to Richard Griffin, the record reflects that counsel made a reasoned, conscious and informed tactical decision not to question Griffin further as she felt that such questioning could be detrimental to petitioner's case. Given the presumption that counsel acted within the bounds of reasonable professional assistance and the prohibition that this Court not attempt to reconstruct the circumstances of counsel's conduct with the distorting effects of hindsight, the Court cannot find that counsel's decision was objectively unreasonable or that the decision was "so ill chosen that it permeate[d] the entire trial with obvious unfairness." *Strickland, Payne, Crane, Martinez,* and *Cavitt, supra.* This is so even if the Court were to disagree with counsel's decision. *See Crane*, 178 F.3d at 312 citing *Green*, 116 F.3d at 1122. Indeed, the Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. *Yarborough v. Gentry*, 540 U.S. 1, 9, 124 S.Ct. 1, 6 (2003).

Finally, the record is clear that counsel focused on the accuracy of the eyewitnesses visual descriptions and visual identifications of petitioner in support of a

25

misidentification defense, rather than their general character as to veracity or truthfulness. As such, any attempt by counsel to impeach the veracity or truthfulness of the eyewitnesses' identification testimony would have been of only marginal import, and thus clearly would not have altered the outcome of petitioner's trial.  Petitioner's self serving conclusory statements to the contrary "fall far short of satisfying *Strickland's* prejudice element."  *Sayre*, 238 F.3d at 635.

**(e) Failure to File a Motion to Suppress**

Petitioner contends that counsel was ineffective for failing to file a motion to suppress information provided by the CI to police and statements relating to petitioner's post-arrest silence.

A claim of ineffective assistance of counsel based on a failure to raise a motion to suppress is governed by the two-pronged *Strickland* test.  Where defense counsel's failure to litigate a Fourth Amendment claim is the principal allegation of ineffectiveness, in addition to the *Strickland* factors, the defendant must prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice. *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Ward v. Dretke*, 4120 F.3d 479, 488 at fn. 19 (5th Cir. 2005) .

Petitioner argues that counsel should have filed a Motion to Suppress challenging his arrest which was allegedly based *solely* on a tip provided by a CI.   Petitioner asserts

that had counsel filed such a Motion, petitioner could have challenged the reliability of the CI's past record and the accuracy of the CI's tip, presumably to establish that petitioner's arrest was not based on probable cause.

To be constitutional, petitioner's arrest must have been based on probable cause based on the totality of the circumstances. *See Illinois v. Gates*, 462 U.S. 213, 230-231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).  Here, petitioner's arrest was not based solely on the information received from the CI as petitioner suggests.  Rather, as Sergeant Harrison testified at trial, police already had a description of the armed robber from all four of the eyewitnesses, and after speaking with the CI, that description did not change.[10]  Thus, Sergeant Harrison testified that the information "assisted" in the investigation and, in the words of defense counsel, "targeted" the investigation.[11]  Stated differently, the CI's information merely "fit into the end of an ongoing investigation, rather than prompting the beginning of a new one."  *See United States v. Blount,* 123 F.3d 831, (5th Cir. 1997).

Further, while Sergeant Harrison testified that the CI provided a name and a general location where the suspect might be found, Sergeant Harrison discovered petitioner on her own after doing "some knocking" in that general location.[12]  Thus, as the trial court held in post-conviction proceedings, any claim that without information from

---

[10] rec. pg. 936-937, 941.

[11]rec. pg. 941.

[12]rec. pg. 947.

the CI the police would not have been able to identify petitioner as the armed robber is "speculative." [rec. pg. 257].

Moreover, while petitioner further speculates that he would have been able to undermine the accuracy or reliability of the CI at a suppression hearing, that claim is belied by Sergeant Harrison's trial testimony.  At trial, Sergeant Harrison testified that she had received "valuable information" from this same CI in the past about different crimes that had occurred in the City. [rec. pg. 940].   An informant's veracity may be determined from the accuracy of the informant's previous information. *See United States v. Laury*, 985 F.2d 1293, 1312-1313 (5th Cir. 1993).

Further, an informant's reliability may be demonstrated on the basis of the details contained in the tip and corroborating circumstances.  *Id*.  In the present case, the CI's past reliability, coupled with the eyewitness descriptions of the armed robber, and their subsequent pre-trial identifications of him, sufficiently established the informant's veracity and reliability.  Petitioner presents nothing but mere speculation that his Fourth Amendment claim is meritorious, and has presented nothing, other than his own self-serving conclusory allegations, to demonstrate that the verdict would have been different had counsel challenged the CI by Motion to Suppress.  This showing, however, is insufficient to demonstrate actual prejudice.  *Sayre, supra*.

Petitioner also argues that his counsel was ineffective for failing to seek suppression of his statement to Officer Gallow that petitioner did not "want to confess

about this robbery without a lawyer present because it carries a lot of time" on grounds that the statement was not admissible.  During post-conviction proceedings, Ms. Malbrough testified that she believed the statement was admissible as a spontaneous utterance or a statement against interest as it was not elicited as a result of questioning by Gallow, but rather was "blurted out" by petitioner just after he had been read his *Miranda* rights.  For these same reasons, she did not think that a Motion to Suppress would have been successful.  [rec. pg.  200-201].  At the conclusion of the hearing, the trial court found that counsel was not ineffective because the statement was spontaneous and admissible, that there was no evidence of coercion or duress, and that the statement would therefore not have been subject to suppression. [rec. pg. 257].

Under the applicable standard of review, the Court cannot find the trial court's decision was contrary to, or an unreasonable application of law as determined by the United States Supreme Court, or an unreasonable determination of the facts in light of the State court record.

As noted by the State, Judge Minaldi of this Court was recently faced with a similar claim in *Duplichan v. Warden, Dixon Correctional Center*, 10-1642, 2013 WL 4516004, *5 (W.D. La. 2013).  In *Duplechain*, after being advised of his *Miranda* rights, the defendant stated  that "he could be backing twenty years if he would say anything" and "that he wasn't saying nothing."  *State v. Duplichan*, 945 So.2d 170, 178 (La.App. 3rd Cir. 2006). When a police officer repeated the defendant's statements at trial, defense counsel did not object.  The Louisiana state appellate court rejected petitioner's

29

ineffective assistance of counsel claim on the ground that "even if [petitioner's] trial counsel was deficient pursuant to *Strickland*, it did not prejudice his case." *Duplichan*, 945 So.2d at 181.  That is, the statement would have been ruled admissible even if counsel had objected.  Upon a review of the record and pertinent jurisprudence, the state appellate court held that the statement was admissible as a "spontaneous utterance" because it was offered without solicitation.  *Id.* at 179.  Furthermore, the state court found that petitioner "made the contested statement contemporaneously with his invocation of his right to remain silent." *Id*. at 178.  Accordingly, because the right could be waived even after invocation, the state appellate court concluded that "the State's reference to [petitioner's] remark . . . pose[d] no constitutional violation . . ." *Id*. at 178-179.

On federal *habeas* review, Judge Minaldi recognized  that the state appellate court grappled with how to characterize petitioner's claim, citing prior state court decisions in support of its decision, and using the terms "contemporaneous" and "spontaneous utterance" to describe the petitioner's statement.  *Duplechan,*  2013 WL 4516004, at *5.  She further recognized that petitioner essentially "claim[ed] that the *manner* in which he invoked his right to remain silent was inadmissible." *Id.*  However, to merit federal *habeas* relief the petitioner must demonstrate how the state court's decision was contrary to or an unreasonable application of clearly established Supreme Court law.  Petitioner had not identified, nor had the court located, any decision where the Supreme Court made such a pronouncement.

To the contrary, Judge Minaldi noted that the Court in *Berghuis v. Thompkins* held, "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Id.* at 2013 WL 4516004 at *5 *quoting Berghuis*, 130 S.Ct. 2250, 2262 (2010).  Thus, because the state appellate court's rationale comported with the holding in *Berghuis* insofar as the "contemporaneous" and "spontaneous utterance" reflected that petitioner understood his constitutional right to remain silent, but in the same breath waived that right, Judge Minaldi found federal *habeas* relief was not warranted.  *Id.*

The facts present in this case are even more compelling to warrant denial of relief than in *Duplechan*.  Here, the record clearly demonstrates that petitioner made the spontaneous statement against his own interest, after being fully apprised of his rights to counsel and to remain silent, and after knowingly waiving those rights orally and in writing, freely, voluntarily and without any threat, duress or coercion whatsoever. Petitioner spontaneously uttered the statement contemporaneously with the invocation of his right to remain silent and his right to counsel.  The statement was not made in response to any police interrogation, but rather was made prior to the time that Officer Gallow asked petitioner any questions about the crime, following a clear indication by petitioner that he would speak to Gallow about the armed robbery.  Moreover, Gallow did not question petitioner after he made this statement; Officer Gallow immediately

31

terminated the interview.   Further, the record reflects that at trial, the prosecutor did not question Gallow about the fact of petitioner's silence or his desire for counsel, he merely elicited petitioner's spontaneous, gratuitous and unsolicited statement.   [*See* rec. pg. 927-931].

Thus, as in *Duplechin*, petitioner's challenge regarding admissibility is essentially to Gallow's recitation of the *manner* in which petitioner invoked his rights to counsel and remain silent.  As Judge Minaldi found in *Duplechan,* there is no United States Supreme Court decision which prohibits such testimony under these circumstances.  To the contrary, Supreme Court jurisprudence permits admission of similar statements made after a *Miranda* warning has been given, when it is shown that the accused understands his rights and makes the statement under circumstances where no coercion or duress are present.  *See Berghuis*, 560 U.S. at 384.  ("Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent.").

Because there does not appear to have been any Constitutional prohibition against admissibility of the statement, as noted by the state trial court, any Motion to Suppress by counsel would not have been successful.  Failure to make a futile motion or objection does not cause counsel's performance to fall below an objective level of reasonableness. *See United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) *citing Green*, 160 F.3d at 1037; *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) *citing Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir. 1990).

For these reasons, petitioner's claim therefore lacks merit.

**(f) Failure to file a Motion in *Limine***

Petitioner contends that counsel was ineffective for failing to file a Motion in *Limine* excluding petitioner's post-arrest statement to police on grounds that the probative value of the statement was substantially outweighed by the danger of unfair prejudice.  At the conclusion of the hearing, the trial court expressly held that the statement was admissible and it "would have allowed the introduction of it." [rec. pg. 257]

In light of the above analysis, under the applicable standard of review, trial counsel's failure to file a motion *in limine* was not constitutionally deficient.  The statement was admissible and the trial court expressly held that it would have allowed its admission.  Accordingly, any Motion *in Limine* filed by counsel would not have been meritorious.  *See Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) *citing Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir.1990) ("This Court has made clear that counsel is not required to make futile motions or objections.").  *See also United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) *citing Green*, 160 F.3d at 1037 ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness . . . .").

Furthermore, petitioner has shown no prejudice from counsel's alleged failure to file a Motion *in Limine*, as any such error was harmless.  In *habeas* cases, the standard of harmlessness is that set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123

33

L.Ed.2d 353 (1993).  Under *Brecht* a conviction may be set aside only if the error "had substantial and injurious effect or influence in determining the jury's verdict."  *Kyles v. Whitley*, 514 U.S. 419, 436 (1995) *citing Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946) and *Brecht*, 507 U.S., at 623.  If an error is harmless under *Brecht*, it is not prejudicial under *Strickland*.  *Harris v. Warden Louisiana State Penitentiary*, 152 F.3d 430, 440 fn. 11 (5th Cir. 1998); *Bates v. Blackburn*, 805 F.2d 569, 578 (5th Cir. 1986), *overruled on other grounds*, *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 1043 (1989).  Therefore, to the extent that the admission of petitioner's statement was harmless, petitioner has failed to demonstrate prejudice under *Strickland*.

That is clearly the case herein.  The evidence of petitioner's guilt was overwhelming.  All four of the eyewitnesses to the armed robbery identified petitioner as the armed robber, three in pre-trial photographic lineups and all four at trial.  Furthermore, one additional witness, Richard Griffin, placed petitioner at the scene of the armed robbery and identified petitioner as one of two persons he drove to the bar the night of the armed robbery.  In light of the record before this Court, petitioner's conclusory statements that the outcome would have been different are insufficient.  *See Sayre, supra.*

Petitioner's claims fail both prongs of *Strickland*.  Thus, *habeas* relief on this ground is not warranted.  *Crane, supra.*

**(g) Failure to Disclose a Conflict of Interest**

Petitioner contends that counsel was ineffective because she labored under a conflict of interest – that counsel had previously represented the State's witness Richard Griffin on a 2003 misdemeanor possession of marijuana charge wherein Griffin apparently entered a guilty plea on January 28, 2005, for which he was sentenced to serve ten days in the Parish Jail, followed by six months unsupervised probation.  During the post-conviction hearing, after Ms. Malbrough was shown a copy of Griffin's written plea agreement, Ms. Malbrough testified that she did not recall representing Griffin, but admitted that the document demonstrated that she had represented him in connection with that charge.  When asked if she recalled Griffin being called to the stand to testify against petitioner, Malbrough responded and then spontaneously asked, "Is that the same Robert?" [rec. pg. 191-192, 194].  Malbrough additionally testified on cross-examination by the State that she did not recognize Griffin at trial as someone she had represented. Moreover, Malbrough confirmed that the record demonstrates that Malbrough's representation ended on January 28, 2005, two and a half years prior to petitioner's trial, prior to the time she was appointed to represent petitioner, and that she had no ongoing representation of Griffin since that time. [rec. pg. 197].

At the conclusion of the hearing, the trial court rejected petitioner's conflict of interest claim noting that an actual conflict of interest "is when the defense is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interest of a former or current client."

35

[rec. pg. 257]. The Court then found as follows: "The problem in this case is [Ms. Malbrough] testified that she didn't even realize Griffin was a former client of hers, that she probably didn't know it.  The Court's impression is she didn't know it until she was confronted with it here today and certainly she didn't know it.  She testified at the time of trial, she wasn't aware of it so I don't see how - - at that time, if she wasn't even aware he was a client that she could chose between the competing interests." [rec. pg. 258].

Petitioner has not shown that  the state court's ruling was contrary to, or an unreasonable application of, federal law, nor has petitioner rebutted the presumption of correctness accorded to the state court's factual determination by clear and convincing evidence or shown that the state court's factual determinations were unreasonable in light of the State court record. To the contrary, the State court's ruling is consistent with federal law and constitutes a reasonable determination of the facts based on the evidence presented.

In order to establish a violation of the Sixth Amendment based on a conflict of interest, "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708 (1980).  A "a speculative or potential" conflict is insufficient. *United States v. Burns*, 526 F.3d 852, 856 (5th Cir. 2008) *citing United States v. Infante*, 404 F.3d 376, 391 (5th Cir. 2005).  An actual conflict exists "only when counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or

current client." *United States v. Culverhouse*, 507 F.3d 888, 892 (5th Cir. 2007) *quoting United States v. Garcia–Jasso*, 472 F.3d 239, 243 (5th Cir. 2006).   An actual conflict exists "when the attorney knows that his clients' interests diverge and must then choose between the interests of multiple clients, or be compelled to compromise his duty of loyalty." *Culverhouse*, 507 F.3d at 892.  Accordingly, the Fifth Circuit has held that "the crux of the conflict issue . . . [is] when [the attorney] learned of his clients' conflicting interests." *Culverhouse*, 507 F.3d at 893.  If an attorney doesn't learn of the conflict during his or her representation, "he could not have made a choice between possible alternative courses of action. . . [and] if he did not make such a choice the conflict remain[s] hypothetical." *Culverhouse*, 507 F.3d at 893 *quoting Garcia–Jasso*, 472 F.3d at 243 (internal quotations omitted).

In this case, the conflict remained purely hypothetical.  While it is true that Ms. Malbrough apparently previously represented Griffin in an unrelated misdemeanor case, over two and one half years prior to petitioner's trial, that representation had been unequivocally terminated and the facts and issues of the previous representation had no relation to the charges brought against petitioner.  Furthermore, the State trial court found, as a matter of fact after hearing Ms. Malbrough's testimony and viewing her demeanor, that at the time of petitioner's trial, Ms. Malbrough did not know or remember that Griffin was a former client of hers, but rather did not realize that was the case until it was brought to her attention at the post-conviction hearing.  Accordingly, she could not have made the requisite choice between the interests of Griffin and petitioner, nor could she have been

37

compelled to compromise her duty of loyalty to either.

Furthermore, even if petitioner had demonstrated an actual conflict existed, which he has not, the burden is on also petitioner to show that "there was some plausible alternative defense strategy that could have been pursued, but was not, because of the actual conflict." *Infante*, 404 F.3d at 393.  This he has not done. Petitioner asserts that defense counsel refrained from questioning Griffin about his prior criminal conviction because of the alleged conflict. The record does not support this contention.  Instead, as discussed above, the record demonstrates that Ms. Malbrough challenged the eyewitness' descriptions of the perpetrator at length in an attempt to demonstrate that they had misidentified petitioner as the armed robber.  There is nothing in the record to indicate that the failure to inquire about Griffin's prior misdemeanor was the result of the "divided loyalties" which would result in an actual conflict.  Rather, as discussed above, the record establishes that the decision was a reasoned tactical choice by Malbrough.

Petitioner also asserts that counsel failed in her duty by not implicating Griffin as either the armed robber or as a person who aided and abetted in the commission of the armed robbery.  This contention is based on petitioner's novel contention that Griffin was a principal or co-conspirator to the armed robbery.  There is no evidence before this Court to support petitioner's conclusory allegation.  To the contrary, all of the eyewitnesses conclusively identified petitioner, not Griffin, as the armed robber.  Petitioner's contention therefore constitutes mere speculation on petitioner's part, which is clearly insufficient to

raise a constitutional issue. *See Green,* 160 F.3d at 1043.

In sum, petitioner has not demonstrated that his counsel labored under an actual conflict of interest, his ineffective assistance of counsel claim is therefore without merit.

## II.  Overruled Objection/Erroneous Admission of Evidence

Petitioner asserts that the trial court erred by overruling petitioner's objection that the State's questioning of Officer Gallow, who had not been called by the State in its case in chief, regarding the waiver of rights form signed by petitioner, was outside the scope of cross-examination. [*See* rec. pg. 93]

The admissibility of evidence is a matter of state law entrusted to the discretion of the trial court. *Beathard v. Johnson,* 177 F.3d 340, 347 (5th Cir. 1999).  Thus, federal courts will not grant *habeas* relief for errors in a trial court's evidentiary rulings unless those errors are so extreme that they constitute a denial of fundamental fairness under the Due Process Clause. *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998) *citing Porter v. Estelle,* 709 F.2d 944, 957 (5th Cir. 1983), *cert. denied*, 466 U.S. 984, 104 S.Ct. 2367, 80 L.Ed.2d 838 (1984); *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998).  *Habeas* relief is justified only if the testimony was erroneously admitted and the testimony was a "crucial, critical, highly significant factor" in the defendant's conviction. *Porter,* 709 F.2d at 957 *quoting Anderson v. Maggio*, 555 F.2d 447, 451 (5th Cir.1977); *Little*, 162 F.3d at 862; *Neal*, 141 F.3d at 214.

In post-conviction proceedings, the trial judge rejected this claim, in pertinent part, as follows:"Article 611 of the Code of Evidence specifically says a witness may be cross-examined on any matter relevant to any issue in the case.  The Court finds that Mr. Richard was within the Guidelines of the Code of Evidence in discussing with Mr. Gallow the *Miranda* rights that were executed by Mr. Buchanon and also his utterance at that time." [rec. pg. 257].  The Louisiana Third Circuit Court of Appeal found "no error" in the trial court's ruling. [rec. pg. 605].

Under the appropriate standard of review, this Court cannot find that the state court's decision was contrary to, or an unreasonable application of, federal law, nor that the state court's factual determinations were unreasonable in light of the State court record.  The trial court committed no error, much less any error creating fundamental unfairness, when it admitted the complained of testimony of Officer Gallow on cross-examination.  Under Louisiana law, the testimony was clearly admissible.

Louisiana Code of Evidence article 611(B) sets forth the scope of cross-examination as follows: "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility."  Thus, in Louisiana, it has long been held that "the scope of cross-examination is not limited to matters covered on direct examination." *State v. Sepulvado,* 672 So.2d 158, 167 (La. 1996) *citing  State v. Constantine*, 364 So. 2d 1011, 1013 (La. 1978) and *State v. Weathers*, 320 So.2d 895, 898 (La. 1975); *State v. Carmouche*, 872 So.2d 1020, 1049 (2002) (citations omitted).  To the contrary,  when a

40

witness "has testified to any single fact in his examination in chief, he may br cross-examined upon the whole case" and "mere doubts as to the propriety of the extent of the cross-examination are always resolved in favor of the cross-examination." *State v. Lane*, 292 So.2d 711, 715 (La. 1974) *quoting* former La.R.S. 15:280; *Weathers*, 320 So.2d at 898.  Furthermore, "[t]he trial court is vested with much discretion in controlling the scope and extent of cross examination. . . ."  *State v. Brooks*, 656 So.2d 772, 776 (La. App. 5th Cir. 1995) *citing State v. Garrison*, 400 So.2d 874 (La. 1981).

Since the undersigned has determined that no error occurred in the admission of the testimony of Officer Gallow on cross-examination, petitioner has no basis for any alleged due process violation.  *Robinson v. Whitley,* 2 F.3d 562, 566-67 (5th Cir. 1993) *citing Banks v. McGougan*, 717 F.2d 186, 190 (5th Cir.1983); *see also Stoot v. Cain*, 2010 WL 2924883, *16 (W.D. La. 2010); *Pierce v. Warden, Louisiana State Penitentiary*, 2009 WL 55937, *27 (W.D. La. 2009).  Moreover, even if the testimony was erroneously admitted, given the overwhelming eyewitness evidence of petitioner's guilt, the court cannot find that the admission of this testimony was a crucial, highly significant factor in the defendant's conviction. *Neal* and *Porter, supra.*  Accordingly, petitioner is not entitled to federal *habeas* relief on this claim.

## **CONCLUSION**

For the reasons set forth above;

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.

**Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. §  2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

Signed at Lafayette, Louisiana, June 29, 2015.

_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE